Silvis, Appellant, *v.* Peoples Natural Gas Company.

454

Argued September 27, 1956.   Before Stern, C. J., Bell, Chidsey, Musmanno and Arnold, JJ.

*Carroll Caruthers,* for appellants.

*Fred B. Trescher,* with him *James B. Sayers,* and *Kunkle & Trescher,* for appellee.

Opinion by Mr. Justice Musmanno, November 12, 1956:

Z. T. Silvus,* owner of a tract of land embracing 49 acres and 35 perches in Bell Township, Westmoreland County, brought an action of ejectment against the People's Natural Gas Company, alleging that he owned the oil and gas on his property and that, therefore, the defendant was without right in erecting thereon a derrick, in laying down a pipe line some 1000 feet long, and extracting from the soil large quantities of natural gas.   The plaintiff also asked for the awarding of dam-

---

* The original plaintiff died since the action began, and it was continued by his personal representatives.

ages due him as a result of the defendant company's alleged illegal occupation and use of his land.

In its answer the defendant corporation denied that the plaintiff was the owner of the controverted oil and gas and asserted itself to be the actual owner by virtue of a recorded lease it entered into on November 10, 1943, with Laura B. Summersgill et al. This lease, in addition to conveying oil and gas, provided for "all other rights and privileges . . . necessary or convenient for said operations, for the transportation of oil and gas produced from said land or for the storage of any gas therein." The defendant admitted the erection of the derrick and the laying down of a 3″ pipe 875 feet in length, but asserted it had made use of only such part of the surface as was necessary to enclose the well it had drilled, with access to and exit from the area, and had used only such soil as was required to hold in place the pipe line buried in the ground.

In addition to claiming ownership of the litigated oil and gas, the defendant filed a counterclaim for $1,002, being rentals paid under two oil and gas leases entered into with the plaintiff, and which will be mentioned later.

The Court below found that title to the oil and gas rested in the defendant company and accordingly granted the defendant's motion for judgment on the pleadings. In addition, the Court framed as issues for trial the plaintiff's asserted right to damages based on the defendant's operations, and the defendant's asserted right to a counterclaim because of rentals paid to the plaintiff.

It is clear from the record, and the abstracts of title filed, that the plaintiff is not the owner of the oil and gas which is the subject of this lawsuit. The common source of the title claimed by the plaintiff and

the defendant is William D. Trout and Johnston Trout, who received their title (a fee simple interest) on August 19, 1861. On the death of William D. and Johnson Trout, the property became vested in equal shares in five heirs-at-law, Elizabeth Bush, Daniel S. Trout, James R. Trout, Maria Trout, and Nancy Trout. Elizabeth Bush and Daniel Trout conveyed their individual interests to James R. Trout, who, adding his own interest, transferred the resulting three-fifths to Robert M. Bush on March 26, 1880, the conveyance not being subject to any exception or reservation. Maria Trout and Nancy Trout deeded their two-fifth interests in the land on June 6, 1885 to Robert Bush, the deed providing: "The grantors reserving their interest in the oil and gas underlying the above described premises."

When Robert Bush died, his daughter (Ethel Hummon) conveyed on Nov. 7, 1914, the property to Philip M. Trucks and W. A. Conrad, "excepting and reserving the gas and oil underlying the said premises, with the right to drill and operate for the same, subject to the payment of any damages to the surface or to fences or growing crops." Bush's widow did not join in the deed.

After the death of W. A. Conrad, his widow (in 1919) conveyed Conrad's interest in the property to the plaintiff. At the same time Philip M. Truck, by separate deed, transferred his interest in the property to the plaintiff. In 1919 the widow of Robert Bush conveyed her dower or other interest in the property to the plaintiff.

On December 12, 1923, the Peoples Natural Gas Company, believing that the plaintiff owned the oil and gas underlying his property, entered into a lease for those minerals for the term December 12, 1923 to December 12, 1933. On July 14, 1933, it entered into a

new lease with the plaintiff for the period July 14, 1933 to December 12, 1943. On November 10, 1943, one month prior to the expiration of the second lease, the defendant company entered into another lease for gas and oil with the daughter of Robert Bush (Ethel Hummon Warner) and the heirs of Nancy Huff and Maria Trout, who had made conveyances to the plaintiff's predecessors in title, subject to the exception of gas and oil.

The issue before this Court calls for an answer to the question: Were the exceptions and reservations in the above mentioned deeds intended to benefit only the grantors so that upon their death full title thereto vested in the plaintiff?

The Maria and Nancy Trout deed provided: "The grantors reserving their interest in the oil and gas underlying the above described premises."

The Ethel Hummon deed provided: "excepting and reserving the gas and oil underlying the said premises, with the right to drill and operate for the same, subject to the payment of any damages to the surface or to fences or growing crops."

The plaintiff argues that these statements constitute reservations and not exceptions and that, therefore, they required words of inheritance if they were to grant rights which would endure beyond the lifetime of the grantor and vest in his heirs. The use of the term "reserving" does not of itself establish a finding that the reservation applies to the grantor alone. "Although a certain degree of formality is associated with deeds of real estate, and technical expressions of established meaning are generally employed to describe the interest to be created thereby, these are not essential. They are but guideposts to assist in the search for the true intention of the parties, which must ultimately control . . ." (*Hess v. Jones*, 335 Pa. 569, 572).

458

In *Mandle v. Gharing*, 256 Pa. 121, this Court said: "Though apt words of reservation be used, says TRUN-KEY, J., in Kister v. Reeser, 98 Pa. 1, 5, they will be construed as an exception, if such was the design of the parties. In Lillibridge et al. v. Lackawanna Coal Co., 143 Pa. 293, 308, Mr. Justice GREEN says that an exception and reservation differ in legal effect, 'but in their creation there is no magic in words, and if the meaning is clear, either expression will operate for the purpose designed.' The technical distinction between an exception and a reservation is frequently disregarded in the ordinary use of the words, and, therefore, whether the language used, in any particular case, creates an exception or a reservation must be determined from the intention of the parties ascertained from the entire instrument. If a particular clause be construed as an exception from the grant, no words of inheritance are necessary because title to the excepted part remains in the grantor and never passes to the grantee; but, if it be construed as a reservation, words of inheritance are necessary, otherwise the right ceases at the death of the grantor, because the grantor creates a reservation to himself of some new right or thing out of the property which he has granted, and which was not in existence at the time of the granting: Whittaker v. Brown, 46 Pa. 197."

It is clear from the language of the deeds under examination that the grantors were not reserving to themselves any new rights but were merely excepting from the terms of those deeds the oil and gas underlying the property, fee simple title to which was already theirs. In the same *Mandle v. Gharing* case already cited, we said: "We think the intention of the parties to the deed was that Gharing should retain the oil and gas from the grant, and that, therefore, the

clause in question created an exception and not a reservation. This was not a lease authorizing the lessee to explore and operate for oil and gas on the premises of the lessor, while he retained the fee in the land. It was not the purpose to convey the oil and gas on a royalty to be paid to the lessor. The instrument was a deed conveying in fee the land which included the oil and gas, but 'excepting and reserving, however, from the above all oil or gas produced from the said undivided one-fourth of the above described piece of land.' This was a reservation not of royalty, but of all the oil and gas which could be produced on the premises. The entire estate of the oil and gas was reserved from the grant, leaving in the grantor the same title to the oil and gas as he would have in the coal and other minerals had they been reserved. No other reasonable inference, we think, can be drawn from the reservation."

In *Whitaker v. Brown*, 46 Pa. 197, the grantor was the owner of a tract of land containing 6 1/2 acres, which he conveyed in a deed containing the following language: "He, the said Boyle Irwin, saving and reserving, nevertheless, for his own use, the coal contained in the said piece or parcel of land". This court held that these words of reservation operated as an exception: "Thus it appears, upon sufficient authority, that words of reservation may operate by way of exception, and to have any effect, *must* do so when the subject of the reservation is not something newly created, as a rent or other interest strictly incorporeal, but is a thing corporate and in esse when the grant is made . . . At the date of the deed, Irwin held it (coal) in fee simple, and because it did not pass by the conveyance, he continued to hold it in fee. The word heirs was not necessary in the reservation, for an estate of inheritance exisited already in Irwin, and, unimpaired by the conveyance, it descended to his heirs at his death. . .

"But what was the extent of the coal reservation? It is an undoubted rule that an exception in a deed is to be construed most strongly against the grantor, and most favourably to the grantee. And upon this principle it is claimed, that it was only a special and temporary use of the coal that was reserved to Irwin himself, a right to use the coal during his life, but which ceased at his death. We cannot so read the clause, 'The coal contained in said piece or parcel of land' was the subject of the reservation. If that means less than the whole, how much less? what proportion of the coal was reserved? Words not larger than these were construed to mean the whole of a coal right in Caldwell v. Fulton, and we confess we should not know by what rule to restrict these words if we felt called upon to impose a restriction where the parties imposed none. Do the words 'for his own use' amount to a restriction? Sometimes the use is limited in point of duration, as while the grantee is tenant of a particular messuage, or so long as he manufactures a specific production; but here it is as general and absolute as so few words could make it. 'For his own use,' means, in such a reservation, the same dominion and proprietorship over the coal that he would have had if he had made no deed for the land. He held it for his own use in all the forms that it was capable of being used at the date of his deed—he held it just as absolutely after his deed was delivered." (Emphasis supplied).

We affirm, therefore, the lower Court's conclusions that the title to the gas and oil did not belong to the plaintiff but vested in the Peoples Gas Company because of its lease with Ethel Hummon and the heirs of Maria and Nancy Trout.

The plaintiff argues that as a tenant the Peoples Gas Company is estopped from denying the landlord's title, but the rule it contends for in this respect is not

applicable to the case at bar because the landlord-tenant relationship had ceased to exist when the action for ejectment was instituted. In the case of *De Forest v. Walters,* 153 N.Y. 229, a property owner brought an action of ejectment against a former tenant who was in possession of the property under a lease from a third party (the town of Huntington, whom the defendant regarded as the real owner). In rejecting the plaintiff's contention there, the Court said: "It appears that from the year 1886 to 1888 Walters (defendant) held this piece of land under lease from the plaintiff's ancestor, the grantee in the deed . . . but in the subsequent years he took a lease from the town and was in possession under such lease at the commencement of this action, so that he was not in possession as the plaintiff's tenant or under the plaintiff. The testimony in the case is entirely consistent with the theory that he went into possession under the lease from the plaintiff's predecessor, supposing that he owned the demised premises and had the right to lease, and that subsequently he ascertained that such was not the fact and then abandoned that possession and attorned to the true owner. The rule that estops the tenant from denying the landlord's title does not apply to such a case, even as between the original parties. . ."

Because the exceptions of the oil and gas rights did not contain any release for damages occasioned to the surface, and since the exception in the Ethel Hummon deed specifically stated that it was "subject to the payment of any damages to the surface or to fences or growing crops," the Court below properly framed an issue for trial on the plaintiff's claim for damages. It erred, however, in also holding for trial the defendant's claim to a return of the paid rentals. Even if we were to assume that the defendant's counterclaim is "a claim arising from the same transaction" and therefore would

be assertable in this ejectment action,* it nevertheless fails to state a valid cause of action. In its counter-claim the defendant asks for the return of the $1,002.00 rentals paid to plaintiff under its two leases with him, as heretofore described. The only ground alleged as basis for the return of the rentals is that the plaintiff was not the lawful or rightful owner of the gas and oil and therefore was not entitled to receive and accept rentals. Nowhere does the defendant allege that its en-joyment of the rights under the leases was in any way interfered with during the specified terms. If the de-fendant company had been sued for the rentals, the tenant could not have defended on the ground that the landlord did not have title: "There was no eviction by the Oil Company, nor was there duress or any other set of facts which entitled defendant to have the judg-ment opened. In the absence of these or similar cir-cumstances, not existing here, a tenant may not dis-pute his landlord's title: Farmers Deposit National Bank of Pittsburg v. Western Pennsylvania Fuel Company, 215 Pa. 115, 64 A. 374, which cited with ap-proval the statement made by Dean Trickett in his work on Landlord and Tenant in Pennsylvania (1st ed.) sec. 756, to the effect that a tenant, by entering in-to possession of the premises in pursuance of a lease, is precluded from refusing to pay the rent on account of defects in the title, and evidence of such defects is irrelevant and inadmissible in an action for the rent. . . *Appellant's claim for restitution of the rent which he had paid must, on the same premises, fall. . . ."* (Em-phasis supplied). (*McRoberts v. Stadelman,* 168 Pa. Superior Ct. 489, 492).

Also it is to be noted that the counterclaim which was not filed until July 18, 1947, seeks to obtain a re-

---

* Rule 1056(a)—Pennsylvania Rules of Civil Procedure.

turn of rentals paid as far back as 1923, even though the deeds of Ethel Hummon and Maria and Nancy Trout were of record for many years prior to 1923. That part, therefore, of the lower Court's decree which orders the framing of an issue on the counterclaim is reversed and it is ordered that judgment be entered in favor of the plaintiff. We do, however, affirm the holding that the defendant is entitled to the oil and gas underlying the plaintiff's property, with right to extract the minerals, although the plaintiff is entitled to a trial on the issue of damage done to the surface of his land, to fences and growing crops and such other damages sustained by him as a result of the drilling and operating performed under the oil and gas lease.

Decree affirmed in part and reversed in part. Case remanded for further proceedings consistent with this Opinion.