J-S28027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUE C. CLUTTER AND ROY L. CLUTTER, HER HUSBAND, PHIL L. LAPPING AND NAOMA C. LAPPING, HIS WIFE, AND JEFF L. LAPPING | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ALLEN C. BROWN, CAROL A. BROWN PURDY, MELVA L. BROWN JOSEPH, DELURA MAE BROWN CAULDER, JUDITH L. FOULK BOWEN, CHARLES M. FOULK, KENNETH E. FOULK, KEVIN A. FOULK, JEFFREY N. KING, JANET L. VERMILLION GEMMELL, JOANN VERMILLION MCVITTY, JOHN D. TSCHURDY, A/K/A JOHN D. TSCHUDY, ROSE MARY TSCHUDY HITES, MARILYN JEAN LOWE, BARBARA ELLEN COMSTOCK, IDELLA LOY, CALVIN DECKARD, DWIGHT DECKARD, NORMA SHIRK, SANDRA N. CLARK, PEGGY J. COLE HAYNES, SHARON L. COLE VAN BURSICK, LARRY COLE, DONALD WILSON COLE, RONALD LEE COLE, JOSEPH E. BORMAN, WILLIAM L. BORMAN, SHERRY SHARLENE COLE BOLES, LINDA S. CLARK LEMAY, BONNIE LOU CLARK HEILMAN, DAVID N. CLARK, GLORIA JEAN MILLER, FRANCIS J. MILLER KIRK, JOANNE PRINCESS CARLYL CLARK, WILLIS FRANKLIN CLARK, JR., ROSE MAE CLARK RUDD, CYNTHIA L. CLARK CAREY, JOHN SHERMAN CLARK, RAY EUGENE CLARK, TAMRA S. GALLANT PENIX, STEVEN RAY GALLANT, DOUGLAS R. GALLANT, BRYAN GALLANT, GARY LEE CLARK, RANDY J. LOCKMAN, DAVID D. ADAMS, LINDA GAIL ADAMS SMITH, BARBARA SUE ADAMS, SARA A. MILLER OSTEEN, ELLEN E. MOUNT, THEODORE A. MOUNT, MARY | |

J-S28027-17

E. MOUNT ALDERMAN, MARILYN J.
MOUNT KOEVAR, DAVID TOMEY,
HAROLD EUGENE MOUNT, NANCY
WISHON MURPHY, MICHAEL ALLEN
KUHNLE, JR., RACHEL M. KUHNLE, KELLY
MARIAH KUHNLE, THOMAS MCCOY, ERIN
MCCOY, MELISSA MARIE WISHON,
MARTIN W. WISHON, MELVIN J.
WISHON, JR., ANTHONY WAYNE MCCOY,
SR., NANCY KAY WISHON, MATTHEW
SAMUEL WISHON, PATRICIA LOUISE
VANSICKLE WHITE, CAROLYN SUE LUST
DYE, CAROL FRANCES VANSICKLE
HATFIELD, RALPH J. CELLAR, KATHRYN
L. CELLAR SULLIVAN, POLLY ANNE
HONNINGFORD KILGORE, DAVID ALAN
KILGORE, JENNIFER E. KILGORE MILAN,
BEVERLY JEAN KILGORE COX, CARL
NOGGLE, JR., CARL RICHARD
WOODRING, SARA L. WOODRING
CHANDLER, JANE ANN NOGGLE LEHNER,
ROBERT ALLEN NOGGLE, WILLIAM LEE
NOGGLE, SR., DOUGLAS ALLEN
FOREMAN, KATHERINE D. FOREMAN,
KRYSTAL S. FOREMAN ZEIGLER, JEFFREY
CARL NOGGLE, DANNY GENE NOGGLE,
JR., TRENTON ISAAC ROWLAND, TRAVIS
LEE ROWLAND, RACHEL CHANDLER,
A/K/A RAYCHAEL CHANDLER, LARRY D.
NOGGLE, TERESA M. NOGGLE COOLEY,
LYNDA LEE NOGGLE DORNBIRER, A/K/A
LINDA LEE NOGGLE DORNBIRER, JOANN
VANSICKLE ORR, SANDRA KAY
VANSICKLE ORLETT, MARY ALICE
VANSICKLE BARTLEY, DONNA JEAN
VANSICKLE NILES, ELIZABETH MARIE
HINTON DELANEY, MINNIE F. HINTON
GAMBLE, JESSE EUGENE SIPES, VICKY
L. SIPES PIERCE, SHARON ELAINE SIPES
THOMPSON, KATHY SUE SIPES
WILLIAMS, JOHN WILLIS SIPES,
BERNICE JEAN SIPES MCCOY, CYNTHIA
LOUISE HAMMOND, DEBORAH SUE
SPITZ, PAMELA KAY HOGAN, JEAN ANN

COPELAND INGRAM, CYNTHIA LOUISE
HAMMOND, LINDA LOU SIPES BROWN,
AND TIMOTHY SIPES

APPEAL OF: JANET L. VERMILLION
GEMMELL

No. 1542 WDA 2016

Appeal from the Order Entered September 13, 2016
In the Court of Common Pleas of Greene County
Civil Division at No(s): 68 AD 2014

BEFORE: OLSON, J., MOULTON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MOULTON, J.: **FILED SEPTEMBER 21, 2017**

Janet L. Vermillion Gemmell appeals from the September 13, 2016 order entered in the Greene County Court of Common Pleas granting the motion for summary judgment filed by Sue C. Clutter, Roy L. Clutter, Phil L. Lapping, Naoma C. Lapping, and Jeff L. Lapping ("Landowners"). We affirm.

On December 28, 2015, Landowners filed a second amended complaint to quiet title to a partial interest in royalties from the production of oil and gas underlying two tracts of land located in Center Township, Greene County, Pennsylvania.[1] The parties submitted stipulated facts, including the following:

### B. The Plaintiffs' Interest in the Property

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Landowners filed suit against numerous defendants. Gemmell is the only named appellant in this appeal. There is a related appeal, docketed at 1484 WDA 2016, which we address in a separate memorandum.

1. Sue C. Clutter and Roy L. Clutter, her husband (collectively "Clutter") own in fee simple real property located in Center Township, Greene County, Pennsylvania totaling 48.6 acres ("Clutter Tract").

2. Phil L. Lapping, Naoma C. Lapping, his wife, and Jeff L. Lapping (collectively "Lapping") own in fee simple real property located in Center Township, Greene County, Pennsylvania totaling 10.2 acres (the "Lapping Tract").

3. The Clutter Tract and Lapping Tract (collectively "Property") are derived from a common source of title, a March 28, 1919 Deed from Anna M. Brown, et vir, et al. to Caleb M. Stewart (the "1919 Deed") that was recorded on April 3, 1919 in the Greene County Recorder of Deeds at Book Volume 267, Page 413.

4. The Clutter's source of title to the Clutter Tract through to the 1919 Deed is derived through [a] series of conveyances[.] . . .

5. The Lappings' source of title to the Lapping Tract through to the 1919 Deed is derived through [a] series of conveyances[.] . . .

**C. The Defendant's Interest in the Property**

6. The grantors under the 1919 Deed, were the children of Louisa Day McVay, a/k/a Lou D. McVay: Anna M. Brown; Herschel C. McVay; Mile E. McVay, a/k/a/ Milo E. McVay; Clara L. Bonham; Millee F. McVay (collectively the "McVay Heirs"), and their respective spouses.

7. The McVay Heirs acquired their interest in the Property through [a] series of conveyances[.] . . .

8. The McVay Heirs are all deceased.

9. The Defendants, totaling 106 people, are the descendants and/or legal heirs of the McVay Heirs.

10. The following Defendants (collectively the "Responding Defendants") have entered an appearance in this action, through counsel, and file an answer to the Complaint:

> a. Bryan Gallant, Gloria Jean Miller, Douglas Gallant, Francis J. Miller Kirk, Steven Gallant, Ray

Eugene Clark, Tamra S. Gallant Penix, a/k/a Tamra Gallant Hancock, Polly Anne Kilgore, David Alan Kilgore, Beverly Jean Kilgore Cox, Jennifer E. Kilgore Milan, a/k/a Jennifer E. Milam, David N. Clark, Linda S. Clark LeMay, Bonnie Lou Clark Heilman, John D. Tschurdy, a/k/a John D. Tschudy, Rose Mary Tschudy-Hites, Marilyn Jean Lowe, Barbara Ellen Comstock, Sara L. Woodring Chandler, Bernice Jean Sipes McCoy, Rose Mae Clark Rudd, Cynthia L. Clark Carey, Joanne Princess Carlyle Clark, Judith Foulk Bowen, Charles M. Foulk, Kevin A. Foulk, John Sherman Clark and Carolyn Sue Lust Dye by Answer to Second Amended Complaint and Counterclaim, dated March 17, 2016.

b. Larry Noggle and Theresa Cooley by Answer to Second Amended Complaint, dated February 26, 2016;

c. Janet L. Vermillion Gemmell by Answer to Second Amended Complaint, dated March 14, 2016; and

d. Marguerite Elain Sipes Britton by Answer to Second Amended Complaint to be filed on or before July 5, 2016.

## D. Disputed title to a one-half royalty interest in the oil and gas produced from the Property.

11. Louisa D. McVay and the McVay Heirs entered into an Oil and Gas Lease with Ullom and Kent, with respect to the Clutter Tract, dated June 1, 1901 and recorded on October 9, 1903 in the Greene County Recorder of Deeds at Book Volume 141, Page 412.

12. Louisa D. McVay entered into an oil and Gas Lease with Ullom and Kent, with respect to the Lapping Tract, dated June 1, 1901 and recorded on October 9, 1903 in the Greene County Recorder of Deeds at Book Volume 141, Page 417.

13. Both of the June 1, 1901 Oil and Gas Leases ("1901 Leases") contain identical terms.

- A royalty for production of oil in an amount "the equal one-eight (1/8th) part of all oil produced and saved from said premises, to be delivered in the pipeline to the credit of the [lessor] free of charge . . ."

- A royalty for production of natural gas in an amount of "Three hundred ($300) Dollars, each year, payable quarterly in advance for the product of each well while the same is being used off the premises, . . ."

- A delay rental for holding the lease as follows "In case no well is commenced within thirty days from this date, then this grant shall immediately become null and void as to both parties. Provided that [lessee] may prevent said forfeiture from quarter to quarter and no longer by paying to the [lessor] in advance" $12.00 for the Clutter Tract and $2.50 for the Lapping Tract "until such well is completed."

14. The 1919 Deed Contains the following clause:

Reserving, also from this conveyance one half of the oil and gas royalty the party of the second part, however, is to have the quarterly rental which is paid from quarter to quarter to prevent forfeiture of the lease.

15. Production is no longer occurring under the 1901 Leases, and [Landowners] and Responding Defendants have never received any royalties or delay rentals from the 1901 Leases.

16. Clutter entered into an Oil and Gas Lease with EQT Production Company ("EQT"), with respect to the Clutter Tract, dated February 28, 2011, a Memorandum of which was recorded on April 29, 2011 in the Greene County Recorder of Deeds at Book Volume 438, Page 3532.

17. Phil L. Lapping and his spouse, Naoma Lapping entered into an Oil and Gas Lease with EQT, with respect to the Lapping Tract, dated March 2, 2011, a

Memorandum of which was recorded on April 15, 2011 in the Greene County Recorder of Deeds at Book Volume 438, Page 1945, and Jeff L. Lapping entered into an Oil and Gas Lease with EQT, with respect to the Lapping Tract, dated March 21, 2011, a Memorandum of which was recorded on April 15, 2011 in the Greene County Recorder of Deeds at Book Volume 438, Page 1974.

18. EQT is producing natural gas from the Property under the leases that it entered into with [Landowners].

19. EQT is paying one-half of the royalty for its production from the Property to [Landowners], for their respective tracts.

20. EQT is withholding payment of one-half of the royalty based upon the royalty reservation contained in the 1919 Deed.

Joint Stipulations, 7/5/16, at 1-7 (citations to record omitted).

On August 1, 2016, Landowners filed a summary judgment motion. On September 1, 2016, Gemmell filed a response. On September 13, 2016, the trial court granted Landowner's motion. On October 12, 2016, Gemmell filed a timely notice of appeal. On December 5, 2016, the trial court directed Gemmell to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which Gemmell filed on the same day.[2]

---

[2] On October 7, 2016, the trial court ordered the defendants who had filed a September 29, 2016 amended notice of appeal to file a Rule 1925(b) statement. The trial court, however, did not issue a Rule 1925(b) order following Gemmell's October 12, 2016 notice of appeal. The December 5, 2016 order was the first order requiring Gemmell to file a Rule 1925(b) statement.

Gemmell raises the following issues on appeal:

> 1. Whether the trial court erred by failing to find that the 1919 reservation of one-half of the oil and gas royalty to the grantors therein constituted an exception of an interest in real property that passed by operation of law to the heirs of the grantors, being all Defendants.
>
> 2. Whether the trial court erred by failing to find that the exception of one-half of the oil and gas royalties in the 1919 Deed was not subject to any limiting conditions and therefore passed by operation of law to the heirs, successors and assigns of the McVay Heirs, being the Defendants in the underlying action.

Gallant Appellants' Br. at 7 (suggested answers omitted).[3]

Our scope and standard of review of a grant of summary judgment are well-settled:

> [O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court . . . . An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must

---

[3] On January 26, 2017, this Court granted Gemmell's application for relief – notice of joinder, concluding that Gemmell may rely on the brief and reproduced record filed by the appellants at docket 1484 WDA 2016. We further ordered that the Prothonotary accept the brief attached to the application for relief as Gemmells brief and docket the brief as filed on January 17, 2017.

We have found that that appellants at docket 1484 WDA 2016 waived their claims for failing to file a 1925(b) statement. However, we decline to find Gemmell's claims waived, where she filed a timely 1925(b) statement.

be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Ralston v. Ralston*, 55 A.3d 736, 739 (Pa.Super. 2012) (quoting *Brandon v. Ryder Truck Rental, Inc.,* 34 A.3d 104, 107–08 (Pa.Super. 2011)). Here, because the parties submitted stipulated facts, our review is limited to determining whether the trial court erred in finding that summary judgment was proper as a matter of law.

To determine whether the trial court properly granted summary judgment, we must interpret the following clause in the 1919 deed:

Reserving, also from this conveyance one half of the oil and gas royalty the party of the second part, however, is to have the quarterly rental which is paid from quarter to quarter to prevent forfeiture of the lease.

Joint Stipulations, Ex. C, at 415.[4]  We must determine whether this clause constitutes an exception of the Property's gas and oil from the deed or

---

[4] "Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral [or subsurface] estate, and the right to subjacent (surface) support.  Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." *Bastian v. Sullivan*, 117 A.3d 338, 344 (Pa.Super. 2015) (quoting *Pa. Servs. Corp. v. Tex. E. Transmission, LP,* 98 A.3d 624, 629 (Pa.Super. 2014)).

whether it is a reservation of the royalty payments received from the extraction of gas and oil from the Property. If it is an exception, as Gemmell contends, then it excepted a real-property right to the oil and gas from the deed that would survive the death of the grantor. If, however, it is a reservation, as Landowners contend and the trial court implicitly found, then it reserved a right to personal property – the royalty payments – that did not survive the death of the grantor.

When interpreting a deed:

> [A] court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

**Ralston**, 55 A.3d at 742 (alteration in original) (quoting **Butler v. Charles Powers Estate**, 29 A.3d 35, 40 (Pa.Super. 2011)).

This Court has explained:

> The terms "exception" and "reservation" have been used interchangeably in deeds. **Walker v. Forcey**, 396 Pa. 80, 151 A.2d 601, 606 (1959). A reservation pertains to incorporeal things that do not exist at the time the

conveyance is made. *Id. See Lauderbach–Zerby Co. v. Lewis*, 283 Pa. 250, 129 A. 83, 84 (1925) (reservation is creation of a right or interest that did not exist prior to grant). However, even if the term "reservation" is used, if the thing or right reserved is in existence, then the language in fact constitutes an exception. *Walker*, 151 A.2d at 606; *Silvis v. Peoples Natural Gas Co.,* 386 Pa. 453, 126 A.2d 706, 708 (1956) (where no new rights are created, language treated as exception). If there is a reservation, it ceases at the death of the grantor, because the thing reserved was not in existence at the time of granting and the thing reserved vests in the grantee. *Id.* An exception, on the other hand, retains in the grantor the title of the thing excepted. *Id.* Because the exception does not pass with the grant, it demises through the grantor's estate absent other provisions. *Id.* at 709.

*Ralston*, 55 A.3d at 741-42. The Pennsylvania Supreme Court has found that:

> [T]he rule in Pennsylvania that the lease of coal in place with the right to mine and remove all of it for a stipulated royalty vests in the lessee a fee. It is a necessary corollary that if the fee to the severed coal is vested in the lessee no interest in the coal as real property remains in the lessor and that his only interest therein is personal property. The lessor's interest in the lease is properly termed a possibility of reverter.

*Smith v. Glen Alden Coal Co.*, 32 A.2d 227, 233 (Pa. 1943) (footnote omitted). Further, this Court has stated:

> A lease of minerals in the ground is a sale of an estate in fee simple until all the available minerals are removed; this leaves the lessor with only an interest in the royalties to be paid under the lease, which are personal property.

*Snyder Bros., Inc. v. Peoples Nat. Gas Co.*, 676 A.2d 1226, 1230 (Pa.Super. 1996) (emphasis omitted).[5]

We conclude that the 1919 Deed created a reservation of the royalty payments from the oil and gas leases then in effect. The 1919 Deed "reserv[ed]" one-half of the "royalty" payments, not one-half of the oil and gas itself. The payments, unlike the oil and gas, were "incorporeal things that [did] not exist at the time the conveyance [was] made." *Ralston*, 55 A.3d at 741.[6] Therefore, the deed created a reservation of a right to

_____

[5] Gemmell relies on *Duquesne Natural Gas Co. v. Fefolt*, in which this Court held that:

> We agree with the court below that the property interest reserved, viz: '. . . one-eighth (1/8th) part of all gas sold from each well . . .' as is described in the oil and gas lease in this case is real property. *Penn-Ohio Gas Company v. Franks' Heirs*, 322 Pa. 233, 185 A. 280 (1936); *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 A. 207, 26 L.R.A., N.S., 614 (1909). If the transfer of the oil and gas rights to the company conveys realty it seems to clearly and logically follow that the reservation clearly set forth in the agreement of a portion of that gas and oil to the grantors must also be realty even though payment was provided by royalties on delivery.

198 A.2d 608, 610 (Pa.Super. 1964). However, as discussed above, the Pennsylvania Supreme Court and the more recent cases from this Court support the conclusion that the reservation of royalties from the production of coal and from the production of oil and gas creates a personal right, not a property right.

[6] When interpreting a similar deed provision, the Court of Common Pleas of Washington County explained:

*(Footnote Continued Next Page)*

personal property that did not survive the death of the grantor.  **See Smith**, 32 A.2d at 301; **Snyder Bros., Inc.**, 676 A.2d at 1230.  Accordingly, we conclude that the trial court did not err as a matter of law in granting Landowner's summary judgment motion.

Order affirmed.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> In such a lease, the oil and gas money payments are not for the minerals in place but are payable only *when produced or raised to the surface*.  Hence, when part of this royalty is reserved by the grantor, something is effected which was not in esse before.  Although provision had been made for payment of royalties, they are not actually payable until the oil and gas are raised to the surface in paying quantities; and although payments had already been made to the grantors before grant of the land to Wyels, and thereafter until the death of both Mr. and Mrs. Luellen, yet each payment would be dependent upon *continued production* of the wells, and is not due until the minerals, gas and oil, are separated from the land and raised to the surface.  Hence, something new has been created, a money royalty dependent upon continuing production.  It is, therefore, properly classified as a "reservation", and in order to pass this right or royalty to the heirs must necessarily have words of inheritance attached.  Since none was employed, the reservation of the right to royalties ceased on the death of the grantors.

**In re Luellen Estate**, 43 Pa.D.& C.2d 467, 473-74 (C.P. Washington 1967).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/21/2017