J-A18027-22

2022 PA Super 166

RALPH G. HUNNELL AND FLORENCE : IN THE SUPERIOR COURT OF
H. HUNNELL, IN THEIR CAPACITY AS : PENNSYLVANIA
TRUSTEES OF THE HUNNELL FAMILY :
REVOCABLE LIVING TRUST :
 :
  Appellants :
 :
 :
   v. : No. 1367 WDA 2021
 :
 :
GARY M. KRAWCZEWICZ AND :
LORENE A. KRAWCZEWICZ, :
HUSBAND AND WIFE, AND EQT :
PRODUCTION COMPANY :

Appeal from the Order Entered October 13, 2021
In the Court of Common Pleas of Washington County
Civil Division at 2011-3258

BEFORE:  STABILE, J., MURRAY, J., and McLAUGHLIN, J.

OPINION BY MURRAY, J.:      **FILED:  September 29, 2022**

  Ralph G. Hunnell and Florence H. Hunnell (collectively, Appellants), in
their capacity as Trustees of the Hunnell Family Revocable Living Trust, appeal
from the order which denied their motion for summary judgment, and granted
the motion for summary judgment of intervenor, EQT Production Company
(EQT).  We affirm.

Appellants own 104 acres in West Bethlehem Township (the Property).

They initiated the underlying action to obtain a declaration of their ownership

of the Property's oil and gas rights.[1]

The trial court summarized the uncontested facts as follows:

Both parties acknowledge that on December 7, 1920, W.N. and
Abbie Theakston entered into an oil and gas lease with The
Manufacturers Light & Heat Company. This "Manufacturers Lease"
covering the Property was recorded on March 11, 1921. The
Manufacturers Lease provided for a then (1) year term
commencing on June 29, 1921, and "as much longer as operations
for Oil and Gas are being conducted on the premises." This lease
further provided that if a well were not completed by that date,
Manufacturers would pay a quarterly rental payment of $859.00
or the lease was rendered "null and void."

The parties further acknowledge that on February 23, 1924,
W.N. and Abbie Theakston conveyed the [P]roperty to [Ernest]
Brtko [(Brtko)].[2] The [Theakston] Deed included 104 acres and
20 perches of land. However, the Deed included multiple clauses
that "excepted and reserved … all of the Pittsburg or river vein of
coal …" and "excepted and reserved … all minerals of whatever
nature and classification may lie beneath said Pittsburg seam of
coal.…"

The parties' dispute centers on the next part of the
[Theakston] Deed that provides:

_____

[1] Appellants named as defendants the 27 heirs of the prior Property owners,
W.N. and Abbie Theakston, including Gary M. and Lorene A. Krawczewicz (the
Krawczewiczes), husband and wife. The parties later stipulated that EQT had
purchased the Property's oil and gas interests from all heirs except the
Krawczewiczes. This Court subsequently amended the caption to reflect that
the Krawczewiczes are the remaining Theakston heirs with an interest in the
Property's oil and gas. The Krawczewiczes have not filed a brief.

[2] The Theakston Deed names the grantee, Ernest "Brtko." Appellants state
that "other public references list the grantee's name as 'Britko.'" Appellants'
Brief at 7 n.2. For consistency, we use the "Brtko" spelling.

"All the oil and gas within and underlying the hereinbefore described tract of land is **also reserved** together with such rights to drill or operate for same as are set forth in full in lease by said W.N. Theakston *et ux*, lessors, to Manufacturers Light and Heat Company, lessee, dated Dec. 7, 1921, the terms of said lease demise and let "unto said lessees all the oil and gas in and under the tract of land" and also said land for the purpose and with the exclusive right of draining and operating thereon for said oil and gas, together with the right of way, and the right to use sufficient water and gas from the premises to drill and operate wells thereon, and such other rights and privileges as are necessary for conducting and operations, and the right to remove, at any time, all property placed thereon by the lessee."

"No wells to be drilled, however, within two hundred feet of the dwelling house or barn now on the premises without consent of the lessors."

If gas is found in paying quantities and conveyed from the premises and marketed, the party of the second part may have gas from the well and or wells on the premises to an amount not exceeding one hundred and fifty thousand (150,000) cubic feet per year free of cost, for light and heat in the dwelling house on the premises by laying the necessary lines and making connections at his cost at such point as may be designated by said Manufacturers Light and Heat Company, lessee, provided such gas is used with economical appliances approved by the lessee, and is measured by meter as is the case of other consumers; said gas to be used at said consumer's own risk, and Gas Company "not to be in any way liable for insufficient supply caused by use of pumping stations, breakage of line or otherwise; but nothing herein shall prevent lessee from abandoning any well or wells and removing the pipe therefore," this privilege is hereby conveyed to the grantee.

Trial Court Opinion, 10/13/21, at 4-5 (citations omitted, footnote added, emphasis in original).

On May 10, 2011, Appellants filed a writ of summons naming the 27 Theakston heirs and Atlas America, LLC (Atlas), as defendants. The action

was listed as a *lis pendens* against the Property. EQT filed a petition to intervene on May 1, 2019, averring that it had purchased oil, gas and mineral rights from 18 of the Theakston heirs named in the writ of summons. Petition to Intervene, 5/1/19, ¶ 5. The trial court granted EQT's petition. Order, 6/19/19.

Appellants filed a complaint for declaratory relief against the 27 Theakston heirs and Atlas[3] on July 19, 2019. Appellants sought a declaration that the oil and gas wells on the Property were abandoned, and title of the oil and gas estate passed to Appellants as surface owners. Complaint, 7/19/19, ¶ 8. EQT filed an answer and new matter claiming fee ownership of the Property's oil and gas. Answer and New Matter, 8/8/19, ¶ 50. In support, EQT relied on the 1924 Theakston Deed. *Id.* ¶ 48. According to EQT, the Theakston Deed included an "exception" of oil and gas rights to the Theakstons. *Id.* EQT argued the Theakstons retained fee simple ownership of the Property's oil and gas. *Id.* ¶ 37.

EQT thereafter filed a motion for judgment on the pleadings, which the trial court denied on April 17, 2020. Trial Court Opinion and Order Denying Judgment on the Pleadings (DJOP Opinion), 4/17/20. The trial court reasoned that certain factual matters, such as whether oil and gas leases existed at the

---

[3] Atlas filed a preliminary objection, and Appellants conceded that Atlas no longer leased the Property's oil and gas. Complaint, 7/19/19, ¶¶ 2, 23. The trial court sustained Atlas's preliminary objection and dismissed all claims against Atlas. *See* Order, 4/17/20.

time of the Theakston Deed, were not clear from the parties' pleadings. *Id.* at 7-8.

The parties engaged in discovery. At the close of discovery, Appellants and EQT filed motions for summary judgment. EQT argued the language of the Theakston Deed constituted an "exception" of the oil and gas rights; therefore, the Theakston successors owned the oil and gas rights in fee. EQT's Motion for Summary Judgment, 3/30/21, ¶¶ 25-26. Appellants argued, (a) the language in the Theakston Deed constituted a "reservation" of oil and gas rights which passed to the surface owner at Theakston's death; and (b) there is no evidence oil and gas production occurred under the Manufacturers Lease prior to February 3, 1924. Appellants' Motion for Summary Judgment, 3/31/21, ¶ 37.

On October 13, 2021, the trial court granted summary judgment in favor of EQT and against Appellants. Trial Court Memorandum and Order, 10/13/21, at 16. The trial court concluded the language in the Theakston Deed constituted an "exception" of oil and gas rights. *Id.* at 14. The trial court recognized its decision "diverge[d] from the ruling made on EQT's motion for judgment on the pleadings." *Id.* Appellants timely appealed. Appellants and the trial court have complied with Pa.R.A.P. 1925.

Appellants present three issues for review:

I. Whether the trial court erred in holding that the oil and gas language in the [Theakston] Deed constituted an exception by Theakston of the oil and gas estate on the Property, where: (a) the [Theakston] Deed used the language of a "reservation"; (b)

the language must be construed against Theakston, the grantor; (c) the reservation was of specific oil and gas interests under the Manufacturers Lease and not of the entire oil and gas estate (*i.e.*, not a corporal hereditament); and (d) the precise language used throughout the Theakston Deed (including without limitation the "excepting and reserving" of other mineral interests, the specific reservation of rights related to the Manufacturers Lease, and the "free gas" clause) strongly indicates that Theakston understood the difference between an "exception" and a "reservation" and deliberately used the term "reservation[?]"

II. Whether the trial court erred by failing to hold that (a) the rights reserved under the Manufacturers Lease had not vested and no property right existed which could be the subject of an exception (as there was no evidence of production of oil and gas), (b) the oil and gas reservation in the [Theakston] Deed did not include words of inheritance, and (c) accordingly, such reserved rights ceased to exist upon Theakston's death[?]

III. [Whether t]he trial court erred by rejecting its prior construction of the oil and gas language in the [Theakston] Deed based upon a new interpretation of the same language within the four corners of the Theakston Deed, without legal or factual basis in support of such new interpretation[?]

Appellants' Brief at 3-4.

Initially, we recognize that our standard of review of an order granting summary judgment,

requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. Upon

- 6 -

appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Wright v. Misty Mt. Farm, LLC***, 125 A.3d 814, 818 (Pa. Super. 2015) (citation omitted).

The parties' dispute concerns the interpretation of a deed. When construing a deed,

> a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. ... To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.
>
> ….
>
> In the absence of fraud, accident or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol. When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed. With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol.

***Id.*** at 818-19 (citations omitted).

The terms "exception" and "reservation" have been used interchangeably in deeds. ***Walker v. Forcey***, 151 A.2d 601, 606 (Pa. 1959).

- 7 -

A reservation pertains to incorporeal things that do not exist at the time the conveyance is made. [**Walker**, 151 A.2d at 606.] **See Lauderbach—Zerby Co. v. Lewis**, 283 Pa. 250, 129 A. 83, 84 (1925) (reservation is creation of a right or interest that did not exist prior to grant). However, even if the term "reservation" is used, **if the thing or right reserved is in existence, then the language in fact constitutes an exception**. **Walker**, 151 A.2d at 606; **Silvis v. Peoples Natural Gas Co.**, 386 Pa. 250, 126 A.2d 706, 708 (Pa. 1956) (where no new rights are created, language treated as exception). If there is a reservation, it ceases at the death of the grantor, because the thing reserved was not in existence at the time of granting and the thing reserved vests in the grantee. [**Silvis**, 126 A.2d at 708.] An exception, on the other hand, retains in the grantor the title of the thing excepted. **Id.** Because the exception does not pass with the grant, it demises through the grantor's estate absent other provisions. **Id.** at 709.

**Ralston v. Ralston**, 55 A.3d 736, 741-42 (Pa. Super. 2012) (emphasis added).

Mindful of the above authority, we address Appellants' first and second issues. Appellants first argue the language of the Theakston Deed "indicates that Theakston '**reserved**' an interest in oil and gas produced under the Manufacturers Lease." Appellants' Brief at 20 (emphasis added). Advancing this interpretation, Appellants argue the Theakston Deed must be construed against its grantor. **Id.** at 25. Because EQT succeeded Theakston, Appellants claim the Theakston Deed must be construed against EQT. **Id.**

Appellants direct our attention to the use of the term "reserved" in the deed, arguing

Theakston twice used the phrase "excepted and reserved" with respect to excepted mineral and coal rights, indicating that he knew that the differing terms existed and chose to use only "reserve'" in connection with the oil and gas clause.

- 8 -

*Id.* (emphasis in original). Appellants emphasize the trial court's prior interpretation of the clause as a "reservation" when it denied EQT's request for judgment on the pleadings. *Id.* at 26.

In addition, Appellants point to the Theakston Deed's free gas clause, "which, instead of merely reciting a free gas privilege, provides free gas under circumstances indicated in the Manufacturers Lease." *Id.* According to Appellants, the "painstakingly precise" language used by Theakston "raises the inference the drafter of the document recognized the difference between an exception and a reservation and deliberately used the term reservation based on the meaning of the word." *Id.* (quoting DJOP Opinion, 4/17/20, at 6). Appellants contend the Theakston Deed did not except all of the oil and gas estate. *Id.* at 27. Rather,

> [t]he described rights under the [Manufacturers] Lease are separate rights retained by Theakston that do not affect the description of the property conveyed. To borrow the language used (incorrectly) by the trial court in its [summary judgment] opinion, such rights are not a corporal hereditament, as a simple exception of the entire oil and gas estate would be. This is because the subject matter of the reservation is not the "entire oil and gas estate" but specific rights in connection with such oil and gas under the Manufacturers Lease.

*Id.* (quotation marks omitted). Appellants further emphasize the absence of "words of inheritance" in the oil and gas clause. *Id.* at 23.

Next, Appellants argue, (a) the rights reserved under the Manufacturers Lease had not vested and no property right existed which could be the subject of an exception (as there was no evidence of production of oil and gas under

the lease); (b) the oil and that gas reservation in the Theakston Deed did not include words of inheritance; and (c) such reserved rights ceased to exist upon Theakston's death. Appellants' Brief at 3; *see also id.* at 39. Appellants claim EQT had the burden of proving that its rights vested prior to the Theakston Deed, through the production of oil and gas. *Id.* at 40-41. "Without establishing this, EQT cannot assert that the oil and gas was excepted under the Theakston Deed." *Id.* at 42 (quoting Trial Court Opinion, at 7). According to Appellants, the lease history indicates there was no oil or gas production under the Manufacturers Lease prior to the Theakston Deed. *Id.* at 43-44. Consequently, Appellants claim Theakston did not obtain a fee simple determinable or "exception." *Id.* at 44.

Finally, Appellants disagree with EQT's reliance on our Supreme Court's decision in *Silvis*, and this Court's decision in *Ralston*. Appellants' Brief at 31-36. Appellants argue, "[h]ere, what was reserved were specific 'rights to oil and gas as set forth in the lease to Manufacturers Light and Heat Company.'" *Id.* at 25 (quoting DJOP Opinion, at 6). We disagree. Upon review, we conclude this case is controlled by *Silvis* and *Ralston*, as well as this Court's more recent decision in *Wright*.

In *Silvis*, Maria and Nancy Trout conveyed their two-fifth's interest in real property to Robert Bush, who owned the remaining three-fifths of the property. However, the Trouts' deed to Bush "**reserve**[**d**] their interest in the oil and gas underlying the above premises[.]" *Silvis*, 126 A.2d at 707

(emphasis added). Z.T. Silvis, successor-in-interest to Bush, claimed Bush owned the oil and gas upon the death of the Trouts. *Id.* When Bush died, his daughter conveyed his interest to Silvis's predecessor, "excepting and reserving the gas and oil underlying the said premises, with the right to drill and operate for the same[.]" *Id.* The Pennsylvania Supreme Court concluded the deed created an "exception" instead of a "reservation." The Court explained:

> The technical distinction between an exception and a reservation is frequently disregarded in the ordinary use of the words, and, therefore, whether the language used, in any particular case, creates an exception or a reservation must be determined from the intention of the parties ascertained from the entire instrument. If a particular clause be construed as an exception from the grant, no words of inheritance are necessary because title to the excepted part remains in the grantor and never passes to the grantee; but, if it be construed as a reservation, words of inheritance are necessary, otherwise the right ceases at the death of the grantor, because the grantor creates a reservation to himself of some new right or thing out of the property which he has granted, and which was not in existence at the time of the granting[.]

*Id.* at 708 (citation omitted). The Supreme Court concluded: "It is clear from the language of the deeds under examination that the grantors were not reserving to themselves any **new** rights but were merely excepting from the terms of those deeds the oil and gas underlying the property, **fee simple title to which was already theirs**." *Id.* (emphasis added).

In **Ralston**, Bernard and Marissa Ralston (Grantors) conveyed property to Walter Francis (Grantee), subject to the following language:

> EXCEPTING AND RESERVING unto Grantors … the following:

- 11 -

1. All timber, coal, gas, oil, and all other minerals in and upon the said property together with the right of ingress, egress, and regress, in cutting, digging for, drilling for, or any other appropriate method of removal for said timber, coal, gas, oil or any other minerals, and the carrying away of the same.

….

3. This property shall not be sold, granted, or conveyed, in whole or in part, to another during the natural lifetime of the GRANTORS.

4. The above exceptions and reservations (item numbers 1, 2, and 3) become null and void upon the death of both of the GRANTORS, at which time the rights set forth in item no. 1 above, become vested in the GRANTEE.

*Ralston*, 55 A.3d at 738. This Court interpreted the language as creating an exception, explaining:

Instantly, paragraph 1 speaks to coal, oil, timber, gas and minerals. These are things that are corporeal, and in existence prior to the deed. Paragraph 1 did not create a new right. Therefore, paragraph 1 created an exception. Because it was an exception, the rights did not pass to [Grantee], but remained with the Grantors to dispose of through their estate. The null and void language does not change the nature of the excepted rights created in paragraph 1. The trial court did not err in concluding that the language of paragraph 1 created an exception, rather than a reservation.

*Id.* at 742.

We reached a similar conclusion in *Wright*, where the sellers sold property to buyers, subject to the following clause in the deed:

Excepting and reserving unto the herein grantors all rights in oil, gas and minerals on property hereby conveyed with the right of ingress and egress and the further right to build or establish coal tipples, and to remove said minerals with least damage as possible to said lands, said oil and gas having been leased under Lease dated June 16, 1949 . . .

- 12 -

> Further, reserving unto the herein grantors the right to maintain, operate and use saw mill on said property for a period of six months from the date hereof, all property of said mill to be fully removed from said premises six months from the date hereof.

***Wright***, 125 A.3d at 817.  When the 1949 lease expired, the buyers and their successors-in-interest executed oil and gas leases.  ***Id.***  The successors to both the buyers and sellers subsequently disputed ownership of the oil and gas.  ***Id.***  We concluded the deed's first clause constituted an "exception":

> This provision states that the [sellers] retained all rights in oil/gas/minerals under the land subject only to the lease of oil and gas rights (but not mineral rights) in the 1949 lease.  When this lease ended, the [sellers] continued to hold the oil and gas rights.  This language creates an exception under the [sellers] retained title to the oil, gas and mineral rights….

***Id.***  Citing ***Silvis***, we concluded the exception required no words of inheritance, because the seller "already held title to the oil, gas and minerals and never parted with them.  Accordingly, these interests passed on to their successors in interest[.]" ***Id.*** at 822.

Here, the Theakston Deed states:

> **All the oil and gas within and underlying the hereinbefore described tract of land is also reserved <u>together with</u> such rights to drill or operate for same as are set forth in full in lease by said W.N. Theakston *et ux*, lessors, to Manufacturers Light and Heat Company, lessee**, dated Dec. 7, 1921, the terms of said lease demise and let "unto said lessees all the oil and gas in and under the tract of land" and also said land for the purpose and with the exclusive right of draining and operating thereon for said oil and gas, together with the right of way, and the right to use sufficient water and gas from the premises to drill and operate wells thereon, and such other rights and privileges as are necessary for conducting and operations,

> and the right to remove, at any time, all property placed thereon by the lessee.

Theakston Deed, 9/19/1924, at 2 (emphasis added).

The above language indicates the Theakstons "were not reserving to themselves any new rights but were merely excepting from the terms of those deeds the oil and gas underlying the property, fee simple title to which was already theirs." **Silvis**, 126 A.2d at 708. The Theakstons retained ownership of the oil and gas, "together with" the rights to drill and operate pursuant to the Manufacturers Lease. **See id.** The trial court explained:

> Importantly, in the [Theakston] Deed, the Clause encumbering "all the oil and gas within and underlying" the Property was not a new right vested in W.N. and Abbie Theakston. No party to this case claims that W.N. and Abbie Theakston lacked title to the oil and gas estate prior to conveying the Property to Mr. Brtko.

Trial Court Opinion, 10/13/21, at 14.

Because the oil and gas clause in the Theakston Deed created no new right or interest, we agree with the trial court's conclusion that the oil and gas clause constituted an "exception" of oil and gas rights. **See Wright**, 125 A.3d at 819 ("A reservation pertains to incorporeal things that do not exist at the time the conveyance is made. … However, even if the term 'reservation' is used, if the thing or right reserved is in existence, then the language in fact constitutes an exception."). Thus, Appellants' first two issues do not merit relief.

In their third issue, Appellants argue "the trial court provided no legal or factual basis to justify its new interpretation of the oil and gas language of

the Theakston Deed." Appellants' Brief at 37. Basically, Appellants argue the trial court failed to explain why its interpretation changed from when it denied EQT's request for judgment on the pleadings. *Id.* Appellants argue the trial court "was correct in the first instance" in holding the language of the Theakston Deed created a reservation of oil and gas rights. *Id.* at 39. Appellants again assert that EQT's interest is defeated by the lack of oil and gas production under the Manufacturers Lease. *Id.* at 39-40.

We discern no error in the trial court revisiting its prior decision interpreting the Theakston Deed:

> The law of the case doctrine states that a court involved in the later phases of a litigated matter should not reopen questions "decided by **another** judge of that same court or by a higher court in the earlier phases of the matter." ***Morgan v. Petrol. Products Equip. Co.***, 92 A.3d 823, 827 (Pa. Super. 2014). A trial judge may always revisit h[is] **own** pretrial rulings without violating the law of the case doctrine. *Id.*

***Wright***, 125 A.3d at 818 (Pa. Super. 2015) (emphasis added). Accordingly, no relief is due.

Order affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/29/2022