J-A10022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AISHA MONROE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CBH20, LP, D/B/A CAMELBACK SKI | : | No. 1862 EDA 2019 |
| RESORT D/B/A CAMELBACK SKI | : | |
| CORPORATION | : | |

Appeal from the Order Dated May 16, 2019
In the Court of Common Pleas of Monroe County Civil Division at No(s):
8184-CV-2016

BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:          Filed: October 22, 2020

The Majority concludes that the trial court properly granted judgment on the pleadings to Camelback, and affirms.  In addition, my colleagues state that even if judgment on the pleadings was improper, they would deny relief based on the trial court's rationale for granting summary judgment.  ***See*** Majority Memorandum at n.8.  Contrary to my distinguished colleagues, I believe Ms. Monroe's pleadings were adequate to withstand judgment on the pleadings.  Moreover, in my view, summary judgment was unwarranted because the trial court erred in refusing to consider Ms. Monroe's expert report in making that determination for three reasons: (1) Pa.R.C.P. 1035.1 defines

_____

[*] Retired Senior Judge assigned to the Superior Court.

the "record" for the purposes of summary judgment as including even unfiled expert reports; (2) Ms. Monroe's report was timely submitted for consideration as Pa.R.C.P. 1035.3 expressly permits supplementation of the record with an expert report within thirty days of the filing of a summary judgment motion; and (3) the expert report herein was filed in the official record as Exhibit "A" to the Response in Opposition to Judgment on the Pleadings/Summary Judgment, and if considered, would have precluded entry of summary judgment in favor of Camelback. Hence, I respectfully dissent.

At issue herein is the propriety of the trial court's grant of contemporaneously filed motions for judgment on the pleadings and summary judgment pertaining to the same cause of action. This unusual procedural posture is critical to my concerns, because the scope of our review differs significantly between these two motions. In reviewing the grant of judgment on the pleadings, we are limited to the pleadings and the documents appended thereto. However, our review of the grant of summary judgment involves a much more expansive scrutiny of the pleadings, depositions, interrogatory answers, affidavits, and expert reports. I submit that where, as here, the record has been developed through discovery and the submission of expert reports, it makes little sense to limit our determination of whether a trial would be a fruitless exercise to review of the pleadings alone. Hence, I believe that the proper focus in this case should be on whether summary judgment was properly granted, *i.e.*, whether viewing the record in the light most favorable

to the non-moving party, there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law.

Nonetheless, my colleagues turn first to the trial court's grant of judgment on the pleadings. The trial court found that judgment on the pleadings was warranted due to Ms. Monroe's "failure to allege the culpable conduct necessary to plead a recklessness claim, the lack of factual support in Plaintiff's Complaint for a recklessness claim, and Plaintiff's specific admittance that negligence was the sole cause of her injuries." Trial Court Opinion, 8/16/19, at 9. In short, the trial court found the complaint was deficient because although Ms. Monroe used the term "recklessness," the court concluded "none of the subsequent allegations approach the type of culpable conduct necessary to plead or prove a claim for reckless conduct." *Id*. Specifically, the trial court took issue with the absence of terms associated with recklessness, such as "conscious disregard" or "reckless disregard" or "extreme departure from ordinary care." *Id*. The Majority affirms judgment on the pleadings based upon the trial court's rationale.

Notably, the trial court denied a motion for summary judgment in the early stages of this litigation after reaching the opposite conclusion: namely, that "Plaintiff's Complaint alleges recklessness on behalf of Defendant" and, as a matter of law, the exculpatory clause in the release executed by Ms. Monroe did not release Camelback from liability arising out of recklessness. Order, 6/13/18, at 1 (citing *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190

(Pa. 2012)). While the trial court subsequently attempts to diminish the significance of this ruling by suggesting that it was made "out of an abundance of caution," the fact remains that Ms. Monroe was entitled to rely upon it, and the trial court's subsequent reversal of its earlier-stated position was extremely prejudicial as it ended her case. *See* Trial Court Opinion, 8/16/19, at 2, 10. Had the court ruled earlier that her complaint was inadequate to plead recklessness, Ms. Monroe likely would have availed herself of the opportunity to seek permission to amend and correct any deficiencies.

Furthermore, I submit that it is of little consequence that Ms. Monroe's complaint sounded in negligence. In *Archibald v. Kemble*, 971 A.2d 513 (Pa.Super. 2009), this Court affirmed the trial court's ruling that permitted the plaintiffs to proceed with a claim of recklessness in a cause of action that sounded in negligence. We recognized therein that the term "recklessness" describes a standard of care that is aggravated negligence, and conduct that is essentially negligence. *Id*. at 519; *see also Tayar*, *supra* at 1200 ("There is no separate tort that need be pled; the degree of care is recklessness."). We also addressed therein the specificity of pleading required to aver reckless conduct. Reasoning that "wanton conduct" is a condition of the mind that may be averred generally, and that recklessness is known as "wanton and willful misconduct," the *Archibald* Court concluded that recklessness is also a condition of the mind that may be averred generally under Rule 4019(b). *Id*.;

*see also* Pa.R.C.P. 4019(b) (providing that "(m)alice, intent, knowledge, and other conditions of mind may be averred generally").

Subsequently, in *Tayar*, our Supreme Court clarified further that the only difference between negligence and recklessness is the state of mind: "recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence." *Tayar*, *supra* at 1200 (citing *Fitsko v. Gaughenbaugh*, 69 A.2d 76 (Pa. 1949)). *Accord Kibler v. Blue Knob Rec., Inc.*, 184 A.3d 974, 985 (Pa.Super. 2018); *Hinkal v. Pardoe*, 133 A.3d 738, 746 (Pa.Super. 2016).

This line of cases makes it clear that negligence actions encompass claims of recklessness, and that no magic words describing the actor's state of mind need be specifically pled. In light of this well-established precedent, I believe that the trial court erred in finding that Ms. Monroe's failure to use legal terms of art associated with recklessness in her pleadings was fatal to her claims.

Although that ruling was dispositive of the litigation, the trial court also determined whether summary judgment was appropriate, just in case this Court might view the motion for judgment on the pleadings as untimely. In ruling on the summary judgment motion, the trial court refused to consider Ms. Monroe's expert report as it was attached to her brief, and "briefs are not a part of the official record." Trial Court Opinion, 8/16/19, at 11 (citing *Scopel*

*v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 606 (Pa.Super. 1997)). The court characterized it as "an improper attempt to supplement the record[,]" and without considering the expert report, the court ruled that there was no genuine issue of material fact, and that summary judgment in favor of Camelback was also proper. *Id*. Camelback urges this Court to affirm on that basis, and argues in addition that the report was untimely as the discovery deadlines and the pre-trial deadline for identifying expert witnesses had passed. *See* Appellee's brief at 14. The trial court rejected the notion that the report was untimely, expressly stating that it did not dispute Ms. Monroe's right to supplement the record with an expert report pursuant to Rule 1035.3(b), even after the close of discovery. *See* Trial Court Opinion, 8/16/19, at 11. However, the trial court granted summary judgment based on Camelback's argument that the report could not be considered as it was not part of the record, and the Majority would affirm based on the trial court's reasoning.

When we review a trial court's grant of summary judgment, we apply the same standard as the trial court: we review all of the evidence of record to determine whether there is a genuine issue of material fact. *Wright v. Misty Mt. Farm, LLC*, 125 A.3d 814, 818 (Pa.Super. 2015). We view the evidence in the light most favorable to the non-moving party and any doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id*. "Only where there is no genuine issue as to any

material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." ***Id***.

As our Supreme Court noted in ***Gerrow v. John Royle & Sons***, 813 A.2d 778, 781-82 (Pa. 2002) (plurality), "the intent of the motion for summary judgment is not to eliminate meritorious claims that could be established by additional discovery or expert reports." Thus, our High Court reasoned, "it is consistent with that intent to permit supplementation of the record under Rule 1035.3(b) to allow the record to be enlarged by the addition of such expert reports." ***Id***. Hence, Rules 1035.1 and 1035.3 plainly provide that affidavits and expert reports may be used by the non-moving party to create an issue of material fact to defeat a motion for summary judgment. ***See*** Pa.R.C.P. 1035.1, 1035.3; ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 799 (Pa.Super. 2012). Supplementary expert reports are timely if submitted within thirty days of the motion for summary judgment. ***See*** Pa.R.C.P. 1035.3(b); ***Gerrow***, ***supra***; ***Reeves v. Middletown Ath. Ass'n.***, 866 A.2d 1115, 1127 (Pa.Super. 2004) (finding abuse of discretion where trial court refused to consider expert reports supplementing the record without first determining whether there was prejudice). Based on the foregoing, Ms. Monroe's expert report, submitted within thirty days of the filing of the motion for summary judgment, was timely filed.

Furthermore, the "record" for purposes of summary judgment "includes any . . . reports signed by an expert witness that would, **if filed**, comply with

Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories." Pa.R.C.P. 1035.1(3) (emphasis added). The foregoing language suggests that expert reports need only be submitted, not filed, in order to be considered in ruling on the motion for summary judgment. Ms. Monroe's expert report is signed by Steve Wolf, contains the substance of his facts and opinions and the basis for those opinions, and substantially conforms with Rule 4003.5(a)(1). Thus, I submit the expert report was included in the "record" for purposes of Rule 1035.1 and summary judgment, regardless of whether it was filed in the official record.

The record reveals, however, that Ms. Monroe's Response in Opposition, Brief, and expert report marked as Exhibit "A", were filed in the official certified record and docketed as one document: "Plaintiff's Response in Opposition to Judgment on the Pleadings." The trial court's belief that the expert report was not made part of the record because it was attached to the brief was based on a misunderstanding of our decision in **Scopel**, **supra**. The issue in **Scopel** was whether depositions attached to the brief in opposition to summary judgment were part of the record. In that case, the brief and depositions were not actually filed. Accordingly, the court ruled it could not consider them, and this Court affirmed.

Herein, the expert report of Mr. Wolf was denoted as Exhibit "A" to Plaintiff's Response in Opposition to Judgment on the Pleadings/Summary Judgment, referenced and incorporated therein, and attached to a packet of

documents that included both the Response and the brief. The documents were filed and docketed as one document. Despite the foregoing, the trial court refused to consider it simply because it was attached to the brief. I believe this constituted reversible error as the trial court did not consider the entire record in ruling on the motion for summary judgment as it was required to do. *See Wright*, *supra* at 818.

Ms. Monroe contends that the expert report created a genuine issue of material fact regarding the recklessness of Camelback's conduct, and precluded the grant of summary judgment. I agree. The expert opined that the zip-line had a landing platform with a face that "protrudes sharply and vertically from the ground around it, at a 90 degree angle to the ground," making the landing deck "perfectly positioned to cause an injury." Response in Opposition to Judgment on the Pleadings/Summary Judgment, Exhibit "A" at 4 (Expert Report of Steve Wolf). Mr. Wolf's report stated that Camelback could have alleviated that obstacle by "lowering the face of the landing deck to ground level or filling in the gap between the ground and the face of the landing deck with an aggregate material" such as dirt or sand. *Id*. The expert opined further that the staff knew of the danger as evidenced by the fact that they covered the protrusion with a piece of carpeting. However, Mr. Wolf maintained that the carpeting merely concealed the danger rather than remedying it. He concluded:

> [T]he injuries sustained by Ms. Monroe are attributable directly to failure of Camelback to act to prevent injury, and the intentional

disregard for safety taken by Camelback in their decision to conceal rather than to remove an obvious threat to the safety of their trusting clients.

*Id*. at 5.

Hence, I disagree with the Majority's holding that judgment on the pleadings was warranted. Furthermore, I depart from my colleagues in their belief that summary judgment was properly granted, and that it provides an alternative basis upon which to deny relief herein. With regard to the latter, I believe the trial court erred and abused its discretion in refusing to consider a properly submitted and filed expert report that would have precluded the grant of summary judgment. Whether Ms. Monroe would have been able to persuade a jury that Camelback was reckless in its operation of the zip-line remained to be seen, but she should have been given the opportunity to do so.

I respectfully dissent.