J-A23028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHANNON C. BOWMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON S. BOWMAN | : | No. 447 MDA 2022 |

Appeal from the Order Entered February 11, 2022
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2016-00825

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.*

MEMORANDUM BY McCAFFERY, J.:          **FILED: NOVEMBER 29, 2022**

Shannon C. Bowman[1] (Mother) appeals *pro se* from the order entered

in the Cumberland County Court of Common Pleas which amended a prior

custody order with regard to the payment of therapy sessions for her son,

_____

* Former Justice specially assigned to the Superior Court.

[1] Although this is a custody matter, the parties' full names appeared in the
caption in the trial court.  Pennsylvania Rule of Appellate Procedure 904
requires that "[t]he parties shall be stated in the caption [on appeal] as they
appeared on the record of the trial court at the time the appeal was taken."
Pa.R.A.P. 904(b)(1).  Although subsection (b)(2) permits the parties in a
custody action to submit an application to use their initials "based upon the
sensitive nature of the facts . . . and the best interest of the child[,]"neither
Mother nor Father has made such an application in this appeal.  *See* Pa.R.A.P.
904(b)(2).  Nevertheless, we will refer to the minor child by his initials or
"Child."

I.W.B. (Child).[2]  The court directed that Mother and Jon S. Bowman (Father) share equally the cost of Child's play therapy, but each bear the cost of their individual sessions with Child's therapist.  On appeal, Mother argues the trial court erred or abused its discretion when it (1) relitigated an issue which had been resolved by a prior order that Father did not appeal, and (2) directed Mother to pay a greater portion of Child's medical expenses than she would be responsible for as calculated under the support guidelines.  Based on the following, we affirm.

As this Court stated in a prior appeal from a custody order involving these parties, "[t]his matter has a lengthy and tortuous procedural history." **S.C.B.**, 218 A.3d at 908.  Briefly, we note the parties were married in October of 2013, but separated shortly after the birth of Child the following year.[3]  **See** Trial Ct. Op., 8/3/20, at 1.  Mother initially filed a complaint for custody on February 11, 2016.  Since that time, the trial court has conducted three custody trials and resolved numerous emergency and contempt petitions filed by both parties.  **See id.** at 1-2.  The most recent custody trial was conducted on November 17 and 30, 2021, and resulted in an amended custody order and parenting plan issued on January 27, 2022, which was amended again on February 11, 2022, after Father filed a motion for reconsideration.  To describe

_____

[2] Child was born in August of 2014.  **See S.C.B. v. J.S.B.**, 218 A.3d 905, 908 (Pa. Super. 2019) (prior appeal).

[3] A final decree in divorce was issued on March 12, 2020.  Trial Ct. Op., 8/3/20, at 1 n.2.

this matter as contentious is an understatement. Indeed, the most recent order includes a schedule for Child's haircuts because the parties cannot, or will not, agree on how Child should style his hair. *See* Amended Custody Order & Parenting Plan, 2/11/22, at 9.

As the trial court explains, however, the present appeal arises from a discrete issue concerning the payment for Child's therapist:

> On October 12, 2021, [the court] held a pretrial conference in this matter [in preparation of the upcoming custody trial. A]t issue on that day, [*inter alia*,] was an adjudication on Father's Petition for Contempt that Mother had failed to send Child to counseling. Ultimately, Father agreed to withdraw the Petition for Contempt as the parties had agreed to send Child to a new counselor, Pamela Moran, Mother's preferred provider. At the end of the pretrial conference, counsel for Mother raised the issue of how the parties should pay for Child's therapy services. The parties had been equally splitting the costs for the Child's previous therapist, and prior to that they had used a 51%/49% ratio set by their support matter. The issue with Ms. Moran's payment schedule was two-fold. First, Ms. Moran intended on billing the parties separately for Child's solo sessions and for sessions when Child was accompanied by one of the parents. Second, Mother's insurance was not accepted by Ms. Moran, but Father's was, so while Father was only paying a $40.00 [co-pay] for his parent sessions with Child, Mother was paying an out-of-pocket fee of $115.00. Child's sessions were billed under Father's insurance with a co-pay of $40.00.[4]

---

[4] The record is unclear as to whether Child's sessions were billed under Mother or Father's insurance policy at that time. At one point during the October 2021 pretrial hearing, Father's counsel stated that "when the session [was] with [Child,] it [was] billed at the $40.00 co-pay under [Father's] insurance." *See* N.T., 10/12/21, at 15. However, counsel later explained that Child was billed under Mother's insurance at the time of the hearing, but that Father intended to put Child on his insurance beginning in January of 2022. *Id.* at 18. Regardless, it was evident that Ms. Moran billed each parent session individually depending on who accompanied Child to the appointment.

Gail Souders, Esquire, the Guardian *ad litem* [hereinafter the GAL], had spoken to Ms. Moran at length about Child's treatment plan and billing. [The GAL] related that the treatment plan is for Child, and that Child is "the patient," however, Ms. Moran believes that it is important to observe the Child with each parent individually. Child's previous counselor did this as well, but she billed every session under Child's account. Ms. Moran intends on having three separate accounts; Child's individual sessions will be billed under Child's account. Mother and Father's separate individual sessions to discuss Child's progress and issues will be billed under their respective accounts. So while Mother and Father are not patients of Ms. Moran, she will be billing them individually for her time with her.

Both parties and [the GAL] proposed a myriad of options on how to split the costs of Child's therapy. Mother suggested the parties split the total cost of Child, Mother, and Father's sessions pursuant to the Support Order for [unreimbursed] medical expenses under which Father must pay 49% of the total. Father objected to using the support calculation because the Support Master specifically stated that parents' individual sessions with the therapist were to be excluded from the support allocation. Father's preferred payment method was that the parties pay their individual sessions and then split the payment for Child's sessions. [The GAL] suggested that the parties equally split the cost of anything covered under the "treatment plan," and if any parent asked for an individual session outside of the "treatment plan," that parent would pay the costs of that session.

After a lengthy argument on the matter which devolved into a perplexing argument on who should carry Child on which insurance plan, [the t]rial [c]ourt had additional questions for Ms. Moran, which [it] asked [the GAL] to relay and report back. For lack of a clear option, and noting that Ms. Moran was not willing to see Child until the billing situation was resolved, [the court] stated that "**Until the new plan**, we are going to do 50/50, regardless if it is [Mother] showing up or [Father] showing up. [The GAL] is going to call to figure out, with my specific questions in mind." [The GAL] then asked for clarification on her duties, to which [the court] responded[:] "Two questions specifically to ask [Ms. Moran]: Number one, if child is carried on Parent A['s insurance] does that affect when Parent B goes in for their sessions? And, will either party have more sessions than the other parent?" [The GAL] confirmed that she understood and stated her intention to follow-up with Ms. Moran.

- 4 -

After the pretrial conference, [the t]rial [c]ourt issued an Order stating that

Any healthcare expenses incurred from [Ms.] Moran, regardless of which parent saw her at the time, will be split fifty-fifty **until further Order of Court**, or until the parents examine and perhaps change the insurance coverage for the minor child. . . [The GAL] is directed to communicate with [C]hild's therapist to inquire as to the pricing plan, specifically, how visits for the [C]hild and each parent are billed and whether either parent will have more sessions than the other parent.

In preparation for trial, [the GAL] submitted a written report to the [c]ourt on November 11, 2021, which was entered into the record[.] As to the billing issue with Ms. Moran, [the GAL] reported that

[Child] is the client. [Ms. Moran] bills for [Child's] appointment on Mother's insurance. [Child] is under Mother's insurance. [Ms. Moran] will be billing Father's insurance when he sees her at his appointment. She will be billing Mother's insurance when Mother sees her at her appointment. This has been an ongoing issue with the parties and [Ms. Moran]. **I suggest the parties pay for their individual appointments and split 50/50 the cost of [Child's] appointments.**

At trial, the issue of payment for counseling came up only twice. First, Mother alluded briefly to the October 12th pretrial conference when arguing for sole legal custody.[FN] The only other mention of payment came from the [GAL] when she was called by Father to testify as to her report. On direct, [the GAL] was asked "What is your understanding of the arrangements to bring [Child] to the counseling sessions?" to which she replied "[t]he Judge wanted me to talk to [Ms. Moran], so I spoke to [her]. And I have to say, [Ms. Moran] is a little frustrated because she's never had this become a big issue, payment. I mean, she's had numerous calls." At that point, Father's counsel stopped [the GAL] and stated "I'm not – not asking about payment. Who – about the arrangements to bring [Child] to the --." [The GAL] went on to testify that "[Child] should be seen at least twice a month. Each parent is required to bring the child in so [Ms. Moran] can make observations. And then she wants to meet with each parent either once a month or every other month, sort of a check in, see how

things are going from their end." [The GAL's] testimony was then directed to other matters. Mother did not ask her any questions about Ms. Moran's treatment plan on cross-examination.

_____

> FN **See** [N.T., 11/18/21, at] 183 . . . ("And then recently we had to have a hearing about which therapist we were going to switch to. And then we had to have another Court Intervention because he didn't want to pay 50 percent of the bill, so we had to have another Court Intervention about that . . ."). **See also** [**id.** at] 190[-91] (". . . Therapy with [Ms. Moran] almost stopped a month ago because I said we should pay her 50/50. Just like the child support order, just like the custody evaluation, and he wanted to argue with it. . . . I don't want to pay it that way. We almost didn't have [Child] in therapy. And we had to come to court and get an order to say, yup, you pay 50/50 so that he can continue . . .").

_____

On January 27, 2022, [the t]rial [c]ourt issued a Custody Order and Parenting Plan with an accompanying Opinion addressing [its] findings and analysis. Inadvertently, [the court] omitted the decision regarding payment of Ms. Moran's fees. After the entry of the Custody Order, Father filed a Motion for Reconsideration, noting that, although Father had reminded [the c]ourt to include the assignment of fees in the Order, [it] failed to do so, and asked [the c]ourt to adopt the recommendation of the [GAL. The trial court] did not provide Mother with an opportunity to respond because Mother did not contest the [GAL's] recommendation at trial. [The court] granted Father's Motion for Reconsideration as to that provision and issued an Amended Custody Order and Parenting Plan on February 11, 2022. The Amended Custody Order included that "the parties shall bear the costs of their respective individual sessions with [Ms.] Moran. The parties shall share equally in the cost of Child's sessions."

On February 17, 2022, Mother filed a Motion for Reconsideration, asking, among other things, that [the t]rial [c]ourt "revert back" to the language of the October 12, 2021 Order, requiring that the total costs of counseling be shared equally because Mother believed that she remembered "the Honorable Judge commenting to the effect of having no problem with all of the therapy costs being split 50/50 because the Child is both of theirs (the parties) and that regardless of which parent is

attending a session with Ms. Moran, the entire therapy is for the benefit of the Child and not about each individual parent receiving therapy." . . .

Trial Ct. Op., 6/17/22, at 1-5 (record citations & some footnotes omitted; some emphasis added).

Before the trial court ruled on Mother's reconsideration motion, Mother filed a notice of appeal on March 14, 2022, accompanied by a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) (requiring concise statement be filed and served with notice of appeal in children's fast track appeal). The trial court filed an opinion addressing Mother's claims on June 17, 2022.

Mother presents the following two issues on appeal:

1. Did the [trial c]ourt commit an error of law and/or abuse its discretion when it relitigated an issue it resolved by the October 12, 2021 Order when no new facts had been established and Father failed to appeal that Order?

2. Did the [trial c]ourt commit an error of law and/or abuse its discretion when it made Mother financially responsible for a greater portion and Father for a lesser portion of Child's medical expenses than would be calculated by PA Child Support law[?]

Mother's Brief at 5.

Our review of a trial court's ruling in a custody matter is well-settled:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may

reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

**S.W.D. v. S.A.R.**, 96 A.3d 396, 400 (Pa. Super. 2014) (citations omitted).

In all custody matters, the best interest of the child is "paramount." **S.W.D.**, 96 A.3d at 403. Our custody statute requires a court to consider 16 enumerated factors when "ordering any form of custody[,]" and "delineate the reasons for its [custody award] on the record in open court or in a written opinion or order." 23 Pa.C.S. §§ 5323(a), (d); 5328(a)(1)-(16). However, a court need not consider and address the 16 factors when it does not "make an award of custody, but merely modifie[s] a discrete custody-related issue[.]" **M.O. v. J.T.R.**, 85 A.3d 1058, 1063 (Pa. Super. 2014). We have explained:

> [I]t makes little sense for a trial court to analyze each of the sixteen 5328(a) factors when arbitrating, for example, a dispute over a custody-exchange location; which youth sports the children should play; or whether a parent should be required to have children's toys, beds, or other things in his or her house. Rather, when read as a whole, it is apparent that the § 5328(a) factors were designed to guide the best-interest analysis when a trial court is ordering which party has the **right** to a form of custody.

**S.W.D.**, 96 A.3d at 403 (emphasis in original; footnote omitted). Thus, we have not required a trial court to address the Section 5328(a) factors when considering the following disputes between the parties: (1) "whether Father was required to be off from work while the Children stayed with him" during

part of the summer;[5] (2) which primary school Child would attend;[6] and (3) whether to grant Mother permission for Child to receive the COVID-19 vaccination.[7] The issue presented in the present appeal — how the parties will pay for Child's therapy sessions — is the same type of discrete custody related issue that does not involve an "award of custody."[8] **See M.O.**, 85 A.3d at 1063. Thus, while the trial court was not required to consider all sixteen factors listed in Section 5328(a) before rendering its decision, it was still required to consider Child's best interest in determining this dispute. **See L.L.B.**, ____ A.3d at ____, 2022 WL 4362040 at *4 (citation omitted).

Before we address Mother's claims on appeal, we must determine if, as the trial court proposes, Mother waived her challenge to the court's determination regarding the payment of Child's therapy fees. In its opinion, the court explained that it was "unable to make a factual finding as to how [Ms. Moran's] fees should be divided" following the October 12, 2021, pretrial hearing. Trial Ct. Op., 6/17/22, at 7. Therefore, it "split the costs equally until more information could be obtained by the [GAL,]" but clearly stated its intention to "make a final determination" following the custody trial. **Id.** Moreover, the court pointed out that, before trial, Mother received a copy of

---

[5] **M.O.**, 85 A.3d at 1063.

[6] **S.W.D.**, 96 A.3d at 403-04.

[7] **L.L.B. v. T.R.B.**, ____ A.3d ____, 2022 WL 4362040, *3, 5 (Pa. Super. 2022).

[8] Notably, neither parent appealed the court's revised custody schedule.

the GAL's supplemental report, which included her recommendation concerning the division of the counseling fees. *Id.* at 7-8. The court further noted that Mother did not object to the GAL's recommendation or cross-examine her regarding the fee issue at trial, nor did Mother present any testimony or evidence "to suggest that she disagreed with the Court issuing an order in line with the [GAL's] recommendation." *Id.* at 8. In fact, the court stated: "[T]he issue of Ms. Moran's fees was not litigated at all." *Id.* at 7. Thus, it concluded Mother waived her issues on appeal. *Id.* at 8.

We decline to find waiver under the circumstances presented here. Following the pretrial hearing and the court's October 12th order, both parties were on notice that the issue of the division of Ms. Moran's fees could be revisited **after** the GAL spoke with Ms. Moran and obtained answers to the court's questions. Further, prior to the custody trial, the GAL provided a supplemental report which included, *inter alia*, Ms. Moran's responses to the court's questions, and the GAL's recommendation concerning the division of Ms. Moran's fees. Nonetheless, neither Mother nor Father questioned the GAL about this issue at trial or presented any evidence or testimony as to how the counseling fees should be divided. After the court entered its January 27, 2022, Amended Custody Order and Parenting Plan, Father moved for reconsideration based, in part, on the fact the court did not include a counseling fee provision in the order. *See* Father's Motion for Reconsideration of January 27, 2022 Order of Court, 2/10/22, at 5-6. The court then amended its order to include the provision at issue without providing Mother the

- 10 -

opportunity to respond. *See* Amended Custody Order & Parenting Plan, 2/11/22. Based on these circumstances, we decline to find Mother waived her objection to the counseling fees division, particularly because the issue was not addressed by **either party** at the custody trial before the court amended its order to include this provision. Accordingly, we proceed to address the claims raised in Mother's brief.

Preliminarily, we note that Mother's *pro se* brief purports to address ten claims, some of which arguably fall under the rubric of the two issues raised in her concise statement.[9] *See* Pa.R.A.P. 1925(b)(4)(v) ("Each error identified

___

[9] Mother framed the two issues in her Rule 1925 statement as follows:

1. Did the [trial c]ourt commit an error of law and/or abuse its discretion when it relitigated an issue it resolved by the October 12, 2021 Order when no new facts had been established and Father failed to appeal that Order? After testimony at the October 12, 2021 hearing, the [c]ourt determined that regardless of which parent is attending a session with Ms. Moran, the entire therapy is for the benefit of the Child and not about each individual parent receiving therapy. At the November 30, 2021 hearing, the [c]ourt entered Exhibit "Court 2" in which the [GAL] confirmed that the Child is the only client. According to Father's Motion of Reconsideration, the [GAL] later emailed the Court and called the appointments attended by the parents "individual" possibly leading to a misinterpretation that the parents were also clients. The Court's subsequent granting of Father's Motion appears to have been swayed by the GAL.

2. Did the [trial c]ourt commit an error of law and/or abuse its discretion when it made Mother financially responsible for a greater portion and Father for a lesser portion of Child's medical expenses than would be calculated by PA Child Support law? Since 2018, the Child's therapist expenses were allocated

*(Footnote Continued Next Page)*

in the Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]").  However, Mother's claims concerning a "Rebuttable Presumption" the child support guidelines are reasonable and "Father's Forum Shopping and Deceitfulness" were not presented in her Pa.R.A.P. 1925(a)(2)(i) statement, nor did she raise them before the trial court.  **See** Mother's Brief at 23-26, 33-35.  Accordingly, they are waived for our review.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008) (claims not included in Rule 1925(b) statement are waived for appellate review).

As Mother's argument is responsive to the trial court's opinion, we begin with a review of the court's ruling.  The trial court addressed Mother's first issue as a challenge based upon the "law of the case" doctrine and determined that it was permitted to "revisit[ ] its own rulings" in this matter.[10]  **See** Trial

_____

by . . . 231 Pa. Code Rule 1910.16-6. Support Guidelines. Basic Support Obligation Adjustments. Additional Expenses (c) Unreimbursed Medical Expenses in a ratio nearly equal to 50/50.  The February 11, 2022 Order alleviates Father of his full responsibility under Support Law.

Mother's Rule 1925 Statement, 3/14/22.

[10] "The law of the case doctrine states that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter[; however, a] trial judge may always revisit [their] own pretrial rulings[.]" **Wright v. Misty Mountain Farm, LLC**, 125 A.3d 814, 818 (Pa. Super. 2015) (citation & quotation marks omitted).

Ct. Op., 6/17/22, at 10. Furthermore, the court found "new facts **had** been established[,]" namely, the GAL submitted a supplemental report and recommendation after speaking with Ms. Moran at the court's direction. *Id.* The court explained:

> The report was made part of the record as required by 23 Pa.C.S. § 5334(a)(6). We were therefore permitted to consider the report in our analysis and decision. Mother was free to refute the report in writing, as contemplated by [Section] 5334(a)(6), or to cross-examine [the GAL] as to her recommendations at trial.

*Id.*

Moreover, while the trial court emphasized that Child is Ms. Moran's only patient, the billing issue arose as a result of Ms. Moran's own billing practices:

> [T]he reality is that Ms. Moran has chosen to bill the parties separately for their respective "check-in" sessions. We do not know why Ms. Moran has chosen to do this. Maybe it is because that is her office policy. Maybe it is because, like this Trial Court, Ms. Moran believes that billing the parties separately will result in the bills being paid without court intervention. But neither party called Ms. Moran to testify and neither party asked [the GAL] any questions about the payments, so we cannot guess Ms. Moran's motivations.

Trial Ct. Op., 6/17/22, at 11.

Therefore, the court ultimately determined,

> [o]rdering the parties to pay their respective bills from Ms. Moran would be in Child's best interest, [by] alleviat[ing] some of the tension between the parents, the key reason [Child] is seeing Ms. Moran in the first place. Neither party has an economic hardship, and we thoughtfully considered the parties' respective positions and the position of the therapist. Eventually, we decided that not only was it practical for the parties to pay for their respective check-in sessions, but it was also in Child's best interest as it allowed us to ensure that there would be no lapse in counseling services over a disputed bill.

- 13 -

Trial Ct. Op., 6/17/22, at 11.

With regard to Mother's argument concerning the child support guidelines, the court found no authority requiring it "to consider the child support guidelines when allocating expenses" in a custody matter. Trial Ct. Op., 6/17/22, at 11. Rather, relying on 23 Pa.C.S. § 5333(d),[11] it determined that "the allocation of payment for counseling is within the discretion of the trial court." *Id.* Moreover, the court emphasized that Mother "did **not** present the Child Support Order" for the court's consideration. *Id.* at 12 (emphasis added). Rather, she simply mentioned the 49%/51% support division[12] at the October 12th pretrial hearing, "at which time Father's counsel told her that the Support Master had specifically exempted payments for Child's counseling from his Order." *Id.* (footnote omitted). The court noted that Mother did not "mention child support at the trial." *Id.* Accordingly, the trial court concluded:

> [I]t considered both parties' positions and the [GAL's] recommendation, which was based off her conversation with Child's counselor. Neither party contested the [GAL's] recommendation at trial, and [the court] made a decision [it] believed to be both practical and in the best interest of Child.

*Id.*

---

[11] Section 5333 provides, in relevant part, that as part of a custody order, a court may "require the parties to attend counseling sessions[,]" and "may order a party to pay all or part of the costs of the counseling sessions under this section." 23 Pa.C.S. § 5333(a), (d).

[12] As we will discuss *infra*, the record in the support matter is not before us. However, both parties agree that Mother was ordered to pay the greater percentage of Child's unreimbursed medical expenses. *See* Mother's Brief at 7-8; Father's Brief at 24.

In her disjointed brief - which features ten separate topic headings - Mother purports to address both claims together. First, her argument concerning the court's "relitigat[ion]" of issues previously resolved no longer centers on the trial court's October 12th order and the "law of the case" doctrine; rather, she shifts her focus to prior orders issued in the parties' support matter. *See id.* at 27, 29. Mother maintains that the principles of *res judicata* and collateral estoppel preclude the trial court from relitigating the "matter of Ms. Moran's payment" which she insists was "fully and fairly decided" in the support matter. *Id.* at 27-28. Moreover, she contends "Father had the burden of proof to show that a substantial and material change of circumstances occurred between December 15, 2021[, when the last support order was issued, and] February 22, 2022[,]" when the trial court entered the amended order at issue herein. *Id.* at 30. She maintains that the trial court should have "looked at the corresponding [support] docket within its own courthouse" and applied the support guideline ratio of a 51%/49% split "to apportion the [therapy] costs between them." *Id.* at 31. Mother rejects the trial court's determination that it had the authority to apportion the costs of the counseling sessions pursuant to 23 Pa.C.S. § 5333(d), because the sessions were for the benefit of Child, not the parent parties. *See id.* at 22-23.

Mother also maintains the trial court made unsubstantiated factual determinations to support its ruling that the apportionment of therapy costs was in Child's best interest, namely, its finding that "there would be a lapse

in counseling services over a disputed bill." *See* Mother's Brief at 37. Although the trial court stated it intended to "alleviate tensions" between the parties, Mother argues that "by deviating from the child support order, [the court] made the tension worse, not better." *Id.* at 39. Lastly, Mother maintains the court's grant of Father's motion for reconsideration was based on information not in evidence; in particular, an email the GAL sent to the trial court's law clerk, **after** the November 30th trial, concerning her conversation with Ms. Moran. *See id.* at 42.

Upon our review of the parties' briefs, the trial court opinion, and the certified record on appeal, we conclude Mother is entitled to no relief.

First, to the extent Mother asserts the trial court had no authority to revisit its October 12, 2021, order, which apportioned Ms. Moran's bills "fifty-fifty" between the parties,[13] we conclude she is simply wrong. A review of the transcript from the pretrial hearing, as well as the court's order, reveals the court's October 12th ruling was a temporary fix — designed to ensure that Child's therapy continued — until the GAL had the opportunity to ask Ms. Moran the court's questions. *See* N.T., 10/12/21, at 23 (court stating, "[u]ntil the new [custody] plan, we are going to do 50/50"), 26 (court directing the GAL to ask Ms. Moran two questions regarding therapy sessions); Order, 10/12/21 ("Any healthcare expenses incurred from [Ms.] Moran . . . will be

---

[13] *See* Order, 10/12/21.

split fifty-fifty until further Order of Court[.]").  Thus, the parties were fully aware the October 12th order did not constitute a final decision on this issue.

As noted **supra**, however, Mother has changed her argument on appeal. While she concedes "[t]he law of the case doctrine does not apply in this case[,]" she argues that the principles of *res judicata* or collateral estoppel preclude the trial court from relitigating prior **support** orders which decided that "all of Child's medical expenses were to be apportioned between the parties on the basis of their income."  **See** Mother's Brief at 29-30.  Mother's claim fails because the child support orders are not included in the certified record on appeal.  Indeed, the support matter was conducted before a different court under a separate docket.  Although Mother included copies of several of the domestic relations support orders and the support master's reports and recommendations in her reproduced record, none of these documents were presented to the trial court, and, consequently, none are included in the certified record on appeal.  Thus, we may not consider them. As this Court has explained:

> [We] may review and consider only items which have been duly certified in the record on appeal.  Furthermore, a document not filed of record does not become part of the certified record by merely making a reproduction and placing that reproduction in the reproduced record.  For purposes of appellate review, what is not of record does not exist.

**Rosselli v. Rosselli**, 750 A.2d 355, 359 (Pa. Super. 2000) (citations omitted).

Furthermore, Mother provides no authority for her claim that the **trial court** should have "looked at the corresponding [support] docket within its own courthouse" before apportioning Child's therapy costs. **See** Mother's Brief at 31. We remind Mother that it was **her attorney** who requested the court in the custody action enter an order "directing how the parties are supposed to pay for the therapist." **See** N.T., 10/12/21, at 7. Counsel advised: "[I]t has been pursuant to the ratio that had been used before, 51/49, and then it was 50/50, and now there is a problem with that[, s]o we need something written, directives, explaining how that's supposed to go." **Id.** at 7-8. Notably, neither Mother nor her attorney requested the court to issue an order consistent with the support order. As noted by the trial court, while Mother mentioned the support order division at the pretrial hearing,[14] Father's attorney then stated that the "Support Master excluded the sessions that were specifically [Mother's] appointments and specifically [Father's] appointments, and allocated [C]hild's apportionments between the two parties by the percentage of their income." **Id.** at 17. If Mother disagreed with this

---

[14] Mother also argued that "this entire therapy is for" Child, and the "support order clearly says that we should do those expenses[.]" N.T., 10/12/21, at 10. She asserted that the support master separated the therapy costs from Father's monthly support obligation because it was difficult to keep track of when an appointment was missed. **See id.** at 10-11. However, she stated that she was supposed to give Father "the expenses, and then it [would be] paid out 49/51." **Id.** at 11. Again, however, neither Mother nor her attorney suggested this matter should be addressed by the support master.

statement, it was incumbent upon her to respond and introduce into evidence the support master's recommendation. This she failed to do.

Indeed, Mother, herself, put the issue of payment for counseling before the custody trial court. Thus, we agree the trial court had the authority to determine how to apportion the cost of that counseling pursuant to 23 Pa.C.S. § 5333(d). Although Mother insists Section 5333 applies only when the court directs the parents to attend counseling, we disagree. *See* Mother's Brief at 23. Indeed, Mother's only objection focuses on the portion of the court's order directing her to pay for **her individual sessions** with Ms. Moran because, she asserts, "the individual session are all part of **Child's** counseling." *Id.* (emphasis in original). While that is true, the court's apportionment applied **only** to the sessions with each individual parent; the court determined that the sessions with Child would be split evenly. Thus, pursuant to Section 5333(d), the court had the discretion to direct each parent to pay for their own individual "counseling" sessions.

Finally, with regard to Mother's claim that the trial court relied upon facts not in evidence, we conclude she is, again, mistaken. First, the trial court's concern that there might be a lapse in counseling services over a disputed bill is supported by the record. At the October 12th pretrial hearing, Mother, herself, stated that she paid Ms. Moran's "entire September [2021] bill in full" so as to "prevent [Child] from being delayed from therapy" over the payment issues. N.T., 10/12/21, at 15. Based on her discussions with Ms. Moran, the GAL agreed that the counselor "doesn't want to proceed until

[they] have [the billing situation] resolved." *Id.* at 19. Furthermore, during the November 18th custody trial, Mother again asserted that "[t]herapy . . . almost stopped a month ago because" she wanted to split the counseling fees "50/50." N.T., 11/18/21, at 190. She insisted: "We almost didn't have [Child] in therapy." *Id.* Thus, the court's concern was valid, and based on testimony in the record.

Moreover, Mother's reference to the court's reliance on matters not in evidence — particularly an email from the GAL to the trial court's law clerk — is a red herring. The email, which was copied to both attorneys of record, was attached as Exhibit E to Father's Motion for Reconsideration. The GAL told the trial court's law clerk that she "forgot to ask if the Court will resolve payment issue with [Ms.] Moran[.]" *See* Father's Motion for Reconsideration, Exhibit E, Email from [GAL] to Erica Ernst, dated 12/16/21. The GAL then reiterated the **same information and recommendation** she provided in her November 11, 2021, supplemental report — that Ms. Moran intended to bill each parent separately for their individual appointments, and the GAL's recommendation that the parties' "split any unreimbursed expenses from [Child's] appointments and pay for their own individual appointments." *Id. See also* November 11, 2021, Supplemental GAL Report, at 1-2 (unpaginated). Thus, the trial court amended its custody order based on information it received **during** the custody trial, *via* the GAL's supplemental report, and not on information provided by the GAL after the trial concluded.

Accordingly, because Mother has provided us with no basis to disturb the trial court's ruling, she is entitled to no relief.

Order affirmed. Father's Application for a Motion to Strike Mother's Counter Argument is denied as moot.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2022